IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| APRIL MAYBEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 4:18-cv-01499-LSC |
| ) | |
| ANDREW SAUL, ) | |
| Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION**

**I.   Introduction**

The plaintiff, April Mayben, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability and Disability Insurance Benefits ("DIB"). Mayben timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mayben was forty years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a high school education. (Tr. at 55-56.) Her past work experience includes employment as a secretary. (Tr. at 65-66.) Mayben claims she became disabled on August 21, 2015, as a result of a 2008 lower back laminectomy; a 2009 spinal fusion; a 2009 neck surgery; a 2009 hysterectomy; a

1

2009 Lapband placement and 2013 Lapband removal; pain in both knees, back, neck, bottom, legs, and feet; diabetes; high blood pressure; and depression and anxiety. (Tr. at 213.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *Id.* The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that

"substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. *Id.*

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*;

*see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Mayben meets the non-disability requirements for a period of disability and DIB and was insured through the date of her decision. (Tr. at 38.) She further determined that Mayben has "not engaged in SGA since August 21, 2015, the alleged onset date" of her disability. (*Id.*) According to the ALJ, Plaintiff's "right knee degenerative joint disease, fibromyalgia, degenerative disc disease, major depressive disorder, post-traumatic stress disorder, and panic disorder with agoraphobia" are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, the ALJ found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) She did not find Mayben's allegations to be totally credible, and the ALJ determined that Mayben has the following RFC:

> to perform light work as defined in 20 C.F.R. 404.1567(b) except the claimant can frequently climb ramps and stairs but never ladders, ropes or scaffolds. The claimant can frequently balance, stoop, and kneel and occasionally crouch or crawl. The claimant can never work around unprotected heights or with hazardous machinery. The claimant can understand, remember, and carry out simple instructions. The claimant can have occasional contact with coworkers and the general public. The claimant can handle infrequent and gradual changes in the work environment.

(Tr. at 40.)

According to the ALJ, Mayben "is unable to perform any of her past relevant work." (Tr. at 43.) The ALJ also determined that Mayben is a "younger individual, age 18-49," and she has a "high school education," as those terms are defined by the regulations. (Tr. at 43.) The ALJ determined that "the transferability of job skills is not material to the determination of disability." (*Id.*) Because Plaintiff cannot perform the full range of light work, the ALJ enlisted a vocational expert ("VE") and used Medical-Vocation Rules as a guideline. (Tr. at 43-44.) The VE found that there are a significant number of jobs in the national economy that Mayben is capable of performing, such as garment sorter, housekeeper, or small parts assembler. (Tr. at 64-68.) The ALJ concluded her findings by stating that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, from August 21, 2015, through the date of this decision." (Tr. at 44.)

## II.  Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are

supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for

reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1989)).

## III. Discussion

Mayben claims that the ALJ's decision should be reversed because the ALJ improperly applied the pain standard by failing to explicitly cite objective medical evidence in the record that discredits her subjective pain testimony.

Plaintiff's subjective complaints alone are insufficient to establish a disability. *See* 20 C.F.R. §§ 404.1529(a), 416.926(a); *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The Eleventh Circuit applies a two-part pain standard when Plaintiff claims disability due to pain or other subjective symptoms. The plaintiff must show evidence of an underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged symptoms arising from the condition, or (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged symptoms. *See* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029; *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

If the first part of the pain standard is satisfied, the ALJ then evaluates the intensity and persistence of Plaintiff's alleged symptoms and their effect on her ability to work. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); *Wilson*, 284 F.3d at 1225-26. In evaluating the extent to which the plaintiff's symptoms, such as pain, affect her capacity to perform basic work activities, the ALJ will consider (1) objective medical evidence, (2) the nature of a Plaintiff's symptoms, (3) the Plaintiff's daily activities, (4) precipitating and aggravating factors, (5) the effectiveness of medication, (6) treatment sought for relief of symptoms, (7) any measures the Plaintiff takes to relieve symptoms, and (8) any conflicts between a Plaintiff's statements and the rest of the evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4); SSR 16-3p. In order to discredit Plaintiff's statements, the ALJ must clearly "articulate explicit and adequate reasons." *See Dyer*, 395 F.3d at 1210.

A credibility determination is a question of fact subject only to limited review in the courts to ensure the finding is supported by substantial evidence. *See Hand v. Heckler*, 761 F.2d 1545, 1548-49 (11th Cir. 1985), *vacated for rehearing en banc*, 774 F.2d 428 (11th Cir. 1985), *reinstated sub nom., Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). Courts in the Eleventh Circuit will not disturb a clearly articulated finding supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). However, a reversal is warranted if the decision contains no indication of the proper application of the pain standard. *See Ortega v.*

*Chater*, 933 F. Supp. 1071, 1076 (S.D.F.L. 1996) (holding that the ALJ's failure to articulate adequate reasons for only partially crediting the Plaintiff's complaints of pain resulted in reversal). "The question is not . . . whether [the] ALJ could have reasonably credited [Plaintiff's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Mayben stated that she had to lie in bed all day, usually four to five days a week, because of her pain, anxiety, lack of ability to concentrate, flashbacks, and panic attacks. (Tr. 57-62.) The ALJ noted that the impairments causing Mayben's underlying medical condition could reasonably be expected to cause her alleged symptoms, satisfying part of the pain standard. (Tr. at 41.) However, the ALJ found that Mayben's statements concerning the intensity, persistence, and limiting effects of these alleged symptoms were not entirely credible by pointing to explicit evidence that is inconsistent with her subjective complaints. (*Id.*) The ALJ covers a variety of evidence to support her conclusion, including objective medical evidence, treatment history, and daily activities. (Tr. at 41-43.) Substantial evidence supports the ALJ's conclusion in this case.

The ALJ began by noting that the objective medical evidence does not support completely disabling allegations of pain and other symptoms. (Tr. at 41-43.) In November 2007, Mayben had a magnetic resonance imaging (MRI) done that

9

displayed minimal to mild degenerative changes in her neck. (Tr. at 292.) On December 7, 2007, Mayben underwent a laminectomy. (Tr. at 303-07.) Then, on December 3, 2009, Mayben underwent a lumbar fusion, but she continued to experience pain. (Tr. at 407-11, 435-44.) Mayben then had another MRI of her cervical spine in July 2016, where Dr. John Rinker, M.D., concluded that Mayben had multilevel degenerative changes namely at C2-3. (Tr. at 539.)

In November 2015, shortly after her alleged onset date for her disability claim, Dr. Sathyan Iyer, M.D., examined Mayben. (Tr. at 516-19.) Dr. Iyer, a consultative physician, determined that Mayben had a decreased range of motion in her lumbar spine, but she had full range of motion in her neck as well as full lateral flexion and rotational motion in her spine. (Tr. at 517-18.) Moreover, even though Mayben testified that she had frequent back pain, Dr. Iyer found that Plaintiff's physical examination was generally normal. (Tr. at 516-21.) Mayben had full range of motion of her shoulders, normal gait, normal muscle power, and full range of motion of her hips, knees, and ankles; her grip strength was normal; and she had generally normal musculoskeletal functioning. (Tr. at 517-18.) Ultimately, Dr. Iyer determined that Mayben would have some limitations with bending, lifting, overhead activities, pushing, and pulling, which was consistent with the ALJ's RFC findings. (Tr. at 40-43, 519.) Mayben's reports of disabling musculoskeletal symptoms are not supported by Dr. Iyer's evaluation. (Tr. 515-21.)

As for her right knee degenerative joint disease, Mayben underwent a right knee arthroscopy in April 2013. (Tr. at 455-61.) During her follow-up visit after her knee surgery with Dr. Stephen Blackstock, M.D., Mayben's treating physician, he noted that Mayben was doing well without complaints. (Tr. at 463.) Moreover, Mayben returned to work for two years after her knee surgery. (Tr. at 188, 202.) In November 2015, Dr. Iyer found on consultative examination that Mayben had full range of motion in her knees. (Tr. at 518.) Recent treatment records do not point to any complaints of knee pain by Mayben to her primary care physician. (Tr. at 633-43.)

Mayben continued to express pain at virtually every visit before and after her surgeries. (Tr. at 285, 287, 293, 297, 308, 311, 318-19, 321, 324-26, 328, 338-41, 343-45, 350, 355, 371, 376, 393, 397, 403, 418-19, 438-51, 454, 465, 469, 470, 516, 519, 568, 600, 607.) Mayben testified that she still experiences pain on a daily basis. (Tr. at 61.) This led Dr. James Robinson, M.D., another treating physician, to diagnose Mayben with fibromyalgia in 2010. (Tr. at 435-54.) In 2015, Dr. Iyer found her symptoms to be suggestive of fibromyalgia as well. (Tr. at 519.) But Mayben's medical records, as of 2017, show that the medication for her fibromyalgia has stabilized her. (Tr. at 698, 705, 711.)

The ALJ gave great weight to Dr. Iyer's opinion, which is inconsistent with the severity of Mayben's alleged symptoms. (Tr. at 41-43.) Despite some discomfort

in her back and suggestive fibromyalgia, Dr. Iyer found Mayben's physical examination unremarkable. (Tr. at 516-21.) None of the few limitations cited by Dr. Iyer is completely disabling nor would affect Mayben's capacity to work because these limitations were included in the RFC determined by the ALJ. (Tr. at 40, 519.)

Substantial evidence also supports the ALJ's credibility determination with regard to Mayben's complaints of disabling mental disorders. Dr. June Nichols, a consultative clinical psychologist, diagnosed Mayben with PTSD, generalized anxiety disorder, panic disorder and major depressive disorder in November 2015. (Tr. at 514.) Based on her examination, she noted that Mayben had full orientation, adequate concentration and attention, grossly intact memory, adequate fund of information, normal abstraction, normal thought process, no auditory or visual hallucinations, good judgment and insight, and average range of intellectual ability. (Tr. at 513-14.) Dr. Nichols opined that while Mayben's abilities might be compromised, she did not demonstrate deficits that would interfere with her ability to remember, understand, and carry out work related instructions. (Tr. at 514.)

The ALJ gave Dr. Nichol's opinion some weight because of her diagnosis of Mayben's mental disorders. (Tr. at 42.) Nonetheless, the opinion is inconsistent with the severity of Mayben's alleged symptoms. (Tr. at 42.) The assessment performed by Dr. Nichols mirrors the RFC results determined by the ALJ. (Tr. at 40, 512-14.)

In other words, she did not find limitations in Mayben's ability to work greater than the limitations provided by the ALJ in the RFC. (Tr. at 40.)

The ALJ also properly considered that the treatment to relieve Mayben's alleged symptoms has been mild. *See* 20 C.F.R. § 404.1529(c)(3) (ALJ may consider treatment history and medication in determining whether claimant's alleged symptoms affect her capacity to work). Mayben testified that she takes pain medication, antidepressants, and medication for her diabetes and hypertension. (Tr. at 63.) Additionally, Mayben has been receiving treatment and therapy at the CED Mental Health Center since May 2016 for her mental impairments. (Tr. at 522-36.) Mayben reported that she is doing better with her depression and panic attacks in February 2017. (Tr. at 689.) While there have been some setbacks in Mayben's progress, the most recent treatment record from August 25, 2017, shows that she is "doing okay" and is able to get out more. (Tr. at 495, 644, 687, 764, 822.)

Finally, the ALJ considered Mayben's daily activities in analyzing her subjective pain complaints. (Tr. at 42.) The ALJ did not rely *solely* on Mayben's daily activities in determining Mayben's subjective pain complaints. *See Macia v. Bowen,* 829 F.2d 1009, 1012 (11th Cir. 1987) (holding that an ALJ may consider daily activities in assessing a Plaintiff's credibility); *see also* 20 C.F.R. § 404.1529(c)(3) (specifically listing daily activities as a factor to consider in evaluating a claimant's credibility). The ALJ analyzed Mayben's activities as one

factor along with the objective medical evidence and her treatment to relieve her symptoms. (Tr. at 41-42.) The ALJ noted that Mayben is able to take a shower, go to the bathroom, grocery shop on a weekly basis, set medication reminders, make plans to take her medication, prepare her own meals, eat three meals a day, perform household chores, drive a car, manage money, and pay bills. (Tr. at 243-51, 514.) Mayben also used an exercise bike during the relevant period, which is suggestive of greater functioning than she alleged. (Tr. at 600-01.)

In sum, despite Mayben's subjective complaints of pain, the objective medical evidence shows that she did not have functional limitations greater than those in the RFC that would affect her capacity to work. She repeatedly exhibited normal gait, full muscle power, adequate concentration and attention, normal extremities, normal grip strength, and intact sensation. *See Wilson*, 284 F.3d at 1226 (determining that substantial evidence supported the ALJ's decision to discount the Plaintiff's subjective complaints). Although Mayben exhibited periodic physical tenderness and mental impairments, the ALJ properly accounted for these minimal limitations caused by her pain by limiting her to light work with several additional restrictions listed. (Tr. at 40.)

## IV. Conclusion

Upon review of the administrative record, and considering Mayben's argument, this Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** and **ORDERED** on February 4, 2020.

_L. Scott Coogler_
United States District Judge

201416